1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RUDY DUARTE, | ) | 1:09cv01767 OWW DLB |
| | ) | |
| Plaintiff, | ) | FINDINGS AND RECOMMENDATIONS |
| | ) | REGARDING PLAINTIFF'S |
| | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| vs. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**BACKGROUND**

Plaintiff Rudy Duarte ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Magistrate Judge for findings and recommendations to the District Court.

**FACTS AND PRIOR PROCEEDINGS**[1]

Plaintiff initially filed an application for DIB in December 2004, which the agency denied at the hearing level. AR 46-55. The district court affirmed the agency's decision in *Duarte v. Astrue*,

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

1   No. 1:06-cv-01252 AWI DLB.

2       Plaintiff filed the current application for DIB on August 31, 2006.  AR 103-07.  He alleged

3   disability since December 1, 2003, due to "pancreitis, espophogus, double hernia, nerve damage,"

4   shoulder problems and disk disease.  AR 118-24.  After being denied initially and on

5   reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 69-

6   72, 74-78, 81.  On August 28, 2008, ALJ Christopher Larsen held a hearing.  AR 22-45.  ALJ

7   Larsen denied benefits on October 23, 2008.  AR 9-19.  On August 11, 2009, the Appeals Council

8   denied review.  AR 1-3.

9       Hearing Testimony

10      ALJ Larsen held a hearing on August 28, 2008, in Fresno, California.  Plaintiff appeared with

11  his attorney, Robert Ishikawa.  Vocational expert ("VE") Jose L. Chaparro also appeared.  AR 12.

12      At the time of the hearing, Plaintiff was 59 years old.  He was born in 1949.  He dropped out

13  of high school, but received a GED while in prison.  AR 27-28.

14      Plaintiff testified that he did construction painting.  He worked for Meter Equipment

15  Company and Rentum Manufacturing.  One was a company that sold propane equipment to the

16  public and the other built the units.  He worked at Meter 15 or 16 years before he got hurt and had

17  surgery.  While there, he worked six days a week and was in charge of all painting.  The heaviest

18  thing he had to lift was cabinetry, which weighed 25 to 60 pounds.  AR 28-29.

19      Plaintiff reported that he wanted to continue working, but his doctor would not release him.

20  He has had four operations to try to correct the nerve damage on his hernia.  Kaiser also sent him to

21  pain management classes.  The hernia bothers him, but the doctor said it cannot be fixed.  Plaintiff

22  also cannot go back to the doctor because he has no money for insurance.  He hasn't seen the doctor

23  since May 2007.  AR 30-31.

24      Plaintiff testified that Dr. Alvarez was his surgeon at Kaiser for the hernia.  Dr. Alvarez

25  worked on Plaintiff four times, but could not fix it.  The first surgery was a hernia repair and the

26  other three were to correct the first surgery.  During the first surgery, they put staples into Plaintiff's

27  nerves and he couldn't walk.  The pain never went away.  They cut him open again to see what it was

28                                                  2

1   and cut certain nerves to release the pressure.  It got infected.  They cut him again two more times.

2   The doctor told him that was it and he had total nerve damage.  AR 31-32.

3       Plaintiff said that the right side of his leg and body is numb and he has constant pain.  He can

4   sit down for 45 minutes and then has to start moving around.  He has pain from his bellybutton past

5   his genitals.  It goes down his right leg, but not past his groin area.  When he tries to pick up things,

6   it starts to throb.  It's like somebody snapping a finger on his personal "things."  If he turns a certain

7   way, it's like a shock goes right up in there.  He does not take too much of his Vicodin because he

8   needs to make it last.  AR 31-33.

9       Plaintiff testified that the hernia area hurts him during the day.  Groceries are the heaviest

10  things he can lift.  He can carry a 10-pound bag of potatoes for about 40 feet and then it starts

11  hurting.  He can stand about an hour and a half in an eight-hour day.  He guessed that he could sit

12  about four hours total during an eight-hour day.  He has groin pain every day.  It hurts to pick up

13  stuff and it has completely wiped out his sex life with his wife.    AR 33-36.

14      Plaintiff explained that he cannot sleep because both rotator cuffs are ripped and he has

15  arthritis.  The doctor told him there was no use fixing it because of his age.  He cannot lift his arms

16  over his head very much.  His wife combs his hair because she says he does a bad job.  He does not

17  have pain every time he lifts his arms over his head.  He can reach straight in front of him.  AR 36-

18  37.

19      Plaintiff reported that he has swelling in his left testicle.  The testicle has moved up and

20  turned a bit.  It is in the wrong place and really hurts him, but they cannot do anything about it.  AR

21  37.  He also reported swelling in his left foot when he gets gout.  When it is bad, it looks like

22  "elephantigo" and he has to keep it elevated for six to eight days.  This happens about twice a year.

23  AR 38.

24      Plaintiff testified that he has no money for insurance.  He told his doctor, who gave him extra

25  medication on his last visit.  He has Vicodin for his hernia surgeries and another medicine to fight

26  gout.  He takes the Vicodin about twice a week.  He also takes Excedrin.  AR 38-39.

27      Plaintiff lives in a house with his wife.  His son comes over and helps with yard work.

28
                                                    3

Plaintiff helps his wife with some of the housework, but he does not vacuum, sweep, mop or do laundry. He cooks microwave popcorn and will do a little dish washing. He can drive, but doesn't go anywhere because he has no money. He doesn't go grocery shopping with his wife. As for outside activities, he likes to shoot at some squirrels. AR 39-42.

Plaintiff told the ALJ that he didn't want to lose his job. He loved his job. He cannot read or write, so he cannot "do a lot stuff." He just did that one thing. AR 43.

Medical Record

On January 9, 2004, Plaintiff reported having significant pain to the right groin area. Dr. Adolfo Alvarez planned to schedule femoral exploration. AR 201.

On January 12, 2004, Dr. Alvarez performed bilateral laparoscopic inguinal hernia repairs. AR 175-76. During a post-operative examination on January 22, 2004, Plaintiff complained that he was still having significant pain. AR 200. At a follow-up appointment on January 29, 2004, Plaintiff reported sharp burning pain with lifting or bending. He was advised to try Motrin for anti-inflammatory effects. AR 199.

In March 2004, Plaintiff again complained of nerve pain from his prior hernia repair. AR

On August 30, 2004, Plaintiff reported post inguinal herniorrhaphy pain. He was doing better on Nortryptilline and a Lidocaine patch. He refused a nerve block. AR 172.

On December 13, 2004, Plaintiff underwent a resection of the general femoral nerve on the right due to significant pain. Dr. Alvarez believed the pain was associated with the femoral genital nerve, and which continued despite prior exploration to free up the nerve as well as injections and medications. AR 173-74.

In February and May 2005, Plaintiff complained of bilateral shoulder pain. AR 192-95.

In May 2005, Plaintiff was diagnosed with arthritis on the discs of the lower back. AR 183. X-rays of his shoulder were normal. AR 184.

On June 8, 2005, Plaintiff received a steroid injection to his right shoulder. AR 191. On July 19, 2005, Plaintiff continued to complain of shoulder pain. The right shoulder injection helped for two days. AR 188.

4

1    An MRI of Plaintiff's shoulders completed on August 14, 2005, revealed a full thickness tear

2    of the left and right supraspinatus tendons.  AR 179-80.  On the same date, he was diagnosed with

3    multi-level degenerative disk disease in his back.  AR 182.

4    On September 30, 2005, Plaintiff saw Dr. Alok Gaur for complaints of bilateral shoulder

5    pain.  Plaintiff indicated that he was unable to sleep and unable to perform overhead activities or

6    reaching out. On examination, he had tenderness around the shoulder area and in the region of the

7    bicipital groove bilaterally.  He also had subacromial clicks with subacromial crepitus on both sides

8    with mild weakness of abduction and external rotation.  AR 164.  An MRI scan confirmed bilateral

9    supraspinatus tears with acromioclavicular arthropathy.   Dr. Gaur diagnosed bilateral rotator cuff

10   tears with subacromial impingement and acromioclavicular arthropathy, along with arthrofibrosis in

11   both shoulders.  The first stage of the treatment plan included manipulation under anesthesia and

12   injections in both shoulders followed by aggressive physical therapy.  AR 163.  The second stage of

13   the plan included an attempted repair of the left torn rotator cuff.  AR 164-165.  In November 2005,

14   Plaintiff declined surgery.  AR 187.

15   On December 28, 2005, Plaintiff saw Dr. Alvarez for treatment.  AR 162.  Dr. Alvarez

16   prepared a letter indicating that Plaintiff underwent bilateral laproscopic inguinal hernia repairs on

17   December 1, 2003.  Since that time, he had experienced "debilitating pain to the right groin."  Dr.

18   Alvarez indicated that despite numerous injections and repeat surgeries, Plaintiff was still

19   experiencing pain to the area and was unable to resume his usual work.  Dr. Alvarez opined that the

20   episodes of pain were "so severe and debilitating" that it was not possible for Plaintiff to work a

21   limited schedule.  His job required lifting heavy loads, which was beyond his capacity.  Dr. Alvarez

22   concluded that considering Plaintiff's major limitations and the inability to correct the problem,

23   Plaintiff "should be strongly considered for permanent disability."  AR 169.

24   On February 28, 2006, Dr. Alvarez prepared a Medical Assessment of Ability to Do Work

25   Related Activities (Physical) form.  Dr. Alvarez opined that Plaintiff could lift 20 pounds

26   occasionally and 15 pounds frequently.  He had decreased functional ability due to nerve entrapment

27   from hernia repair, bilateral rotator cuff tear, subacromial impingement, arthrofibrosis, multilevel

28

5

1    degenerative disk disease and arthritis on several levels of his back.  AR 220.  Plaintiff could stand

2    and/or walk a total of 2-3 hours in an 8-hour day due to pain from nerve entrapment, arthritis to back

3    and degenerative disk disease.  AR 220.  He could sit 2-3 hours total in an 8- hour day due to pain

4    from nerve entrapment and disk disease.  He occasionally could balance, but could never climb,

5    kneel, crouch, stoop or crawl.  Dr. Alvarez indicated that any activity requiring flexion at the hip or

6    movement of the upper leg caused excruciating pain to groin area.  Dr. Alvarez further indicated that

7    Plaintiff's reaching, handling, feeling and pushing/pulling were affected by his shoulder problems.

8    AR 221.  Plaintiff also had environmental restrictions to vibrations, which could irritate the

9    entrapped nerve.  AR 222.

10        On October 20, 2006, Dr. Rustom F. Damania completed a consultative examination.

11   Plaintiff complained of shoulder pain due to torn rotator cuffs and degenerative joint disease, chronic

12   left knee pain, pain and numbness in his groin area and chronic low back pain due to degenerative

13   joint disease.  AR 204.  On examination, Plaintiff had areas of impaired sensation and

14   hypersensitivity around the right groin and upper thigh areas on both sides.  AR 206.  Dr. Damania

15   diagnosed Plaintiff with a history of rotator cuff injury in both shoulders, status post inguinal hernia

16   repair on both sides with persistent hypersensitivity, paresthesias and numbness in the area, chronic

17   low back pain with no clinical evidence of radiculopathy and chronic pain in the left knee with no

18   diagnosis.  AR 207.

19        Following examination, Dr. Damania opined that Plaintiff should be able to lift and carry 20

20   pounds occasionally and 10 pounds frequently.  He should be able to stand and walk for six hours

21   out of a normal eight hour workday.  Plaintiff reported that he was unable to sit longer than one hour

22   due to pain from the nerve injury.  Dr. Damania indicated that this should be "correlated with any

23   medical records from Kaiser Hospital."  AR 208.  Dr. Damania further opined that Plaintiff had

24   postural limitations to frequent bending, stooping or crouching.  His manipulative limitations were

25   secondary to both shoulder problems, and he had "impairment to reaching above the level of both

26   shoulders."  He had no impairments to handling, feeling, grasping or fingering.  He also had no

27   relevant visual or communicative impairments, but had workplace environmental limitations to

28                                                    6

1  climbing and balancing.  AR 208.

2      On October 31, 2006, I. Ocrant, the state agency medical consultant, completed a Physical

3  Residual Functional Capacity Assessment form.  Dr. Ocrant opined that Plaintiff could lift and/or

4  carry 50 pounds occasionally, 25 pounds frequently, could stand and/or walk about six hours in an 8-

5  hour workday and sit for about 6 hours in an 8-hour workday.  Plaintiff was precluded from overhead

6  work, but had no other manipulative limitations.   He also had no postural, visual, communicative or

7  environmental limitations.  AR 209-13.

8      On February 12, 2007, Plaintiff sought treatment from Dr. Jaime Luis Gonzalez for right foot

9  edema, pain and redness.  Plaintiff's gout medication had expired.  On examination, Dr. Gonzalez

10 noted right foot edema and erythema of the anterolateral aspect of the right foot, which was tender to

11 touch with an increase in temperature.  Dr. Gonzalez opined that it was most likely gout.  Plaintiff

12 was prescribed medications and given intramuscular injections.  AR 224-25, 235-36.

13     On April 30, 2007, Dr. Sadda Reddy, a state agency medical consultant, reviewed the records

14 and affirmed Dr. Ocrant's opinion.  Dr. Reddy noted that *Chavez* applied, there had been no

15 significant or material changes since the ALJ's decision and the agency was "required to adopt the

16 ALJ decision of medium with limited overhead reaching."  AR 217-18.

17     On May 22, 2007, Plaintiff again saw Dr. Gonzalez for pain in the lower abdominal area that

18 was not corrected by surgery.  On examination, Plaintiff had no testicular masses or tenderness, no

19 hernias and no abnormalities.  He also had no symptoms of gout.  AR 224.

20     ALJ's Findings

21     The ALJ first explained that Plaintiff was found not disabled in a prior hearing decision dated

22 February 16, 2006.  Therefore, the presumption of continuing non-disability applied to the

23 unadjudicated period after February 16, 2006, which could be overcome by evidence of a changed

24 circumstance.  AR 12; *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988).  As Plaintiff had entered a

25 new age category, the ALJ could not mechanically apply the presumption.  AR 12.

26     As to the current application, the ALJ found that Plaintiff had not engaged in substantial

27 gainful activity since December 1, 2003.  He had the severe impairments of rotator cuff injuries in

28

7

1   his bilateral shoulders, status post inguinal hernia repair with residual neuropathy on the right and

2   lumbar degenerative disc disease.  Despite these impairments, the ALJ determined that Plaintiff

3   retained a residual functional capacity ("RFC") to lift and carry 50 pounds occasionally and 25

4   pounds frequently, but could not work overhead.  He could stand and walk for six hours and sit for

5   six hours in an eight-hour workday.  With this RFC, Plaintiff could not perform his past relevant

6   work, but could perform other jobs existing in the national economy.  AR 15-19.

7                                              **SCOPE OF REVIEW**

8          Congress has provided a limited scope of judicial review of the Commissioner's decision to

9   deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the

10  Court must determine whether the decision of the Commissioner is supported by substantial

11  evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson*

12  *v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514

13  *F.2d 1112, 1119, n. 10 (9th Cir. 1975).*  It is "such relevant evidence as a reasonable mind might

14  accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole

15  must be considered, weighing both the evidence that supports and the evidence that detracts from the

16  Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the

17  evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*,

18  *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the

19  Commissioner's determination that the claimant is not disabled if the Commissioner applied the

20  proper legal standards, and if the Commissioner's findings are supported by substantial evidence.

21  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

22                                              **REVIEW**

23         In order to qualify for benefits, a claimant must establish that he is unable to engage in

24  substantial gainful activity due to a medically determinable physical or mental impairment which has

25  lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §

26  1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity

27  that he is not only unable to do his previous work, but cannot, considering his age, education, and

28                                                  8

1    work experience, engage in any other kind of substantial gainful work which exists in the national

2    economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the

3    claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

4         In an effort to achieve uniformity of decisions, the Commissioner has promulgated

5    regulations which contain, inter alia, a five-step sequential disability evaluation process.  20 C.F.R.

6    §§ 404.1520 (a)-(g).  Applying the process in this case, the ALJ found that Plaintiff: (1) had not

7    engaged in substantial gainful activity since December 1, 2003; (2) has an impairment or a

8    combination of impairments that is considered "severe" (rotator cuff injuries in his bilateral

9    shoulders, status post inguinal hernia repair with residual neuropathy on right, and lumbar

10   degenerative disc disease) based on the requirements in the Regulations (20 C.F.R. § 404.1520(c));

11   (3) does not have an impairment or combination of impairments which meets or equals one of the

12   impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot not perform his past

13   relevant work; but (5) can perform jobs that exist in significant numbers in the national economy.

14   AR 14-19.

15        Here, Plaintiff contends that the ALJ erred by: (1) improperly evaluating the opinions of his

16   physicians; and (2) improperly analyzing his credibility.

17                                **DISCUSSION**

18   A.    Analysis of Medical Opinions

19         *Dr. Alvarez*

20         Plaintiff contends that the ALJ committed reversible error when he rejected Dr. Alvarez'

21   February 28, 2006, assessment.  It is true that the medical opinion of a claimant's treating physician

22   is entitled to "special weight."  *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988); *Valencia v.*

23   *Heckler*, 751 F.2d 1082, 1088 n. 7 (9th Cir. 1985).  However, an ALJ may reject a contradicted

24   treating physician's opinion on the basis of clear findings that set out specific, legitimate reasons for

25   the rejection.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

26         In this case, the district court considered Dr. Alvarez' February 2006 assessment submitted

27   with his prior application for disability benefits.  The district court analyzed the opinion as follows:

28                                        9

1
2
3
4
5
6
7

   Finally, Plaintiff argues that this Court should consider Dr. Alvarez' February 28, 2006, assessment that was requested after the ALJ's decision and presented to the Appeals Council. Pursuant to *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993), this Court must consider evidence added to the record by the Appeals Council even where that evidence was not before the ALJ. However, his argument is based on his incorrect assumption that the sole basis of the ALJ's rejection of Dr. Alvarez' opinion was because it did not provide specific restrictions. As explained above, the ALJ also cited Dr. Hassan's contrary findings in support of his decision to reject Dr. Alvarez' opinion. Therefore, Plaintiff's contention that the Appeals Council, "denied a remand or review of the case despite having in its possession a document from plaintiff's treating physician which sets forth the 'specific restrictions' deemed missing by the ALJ, and thereby satisfying the sole reason offered by the ALJ for not giving the treating physician opinion controlling weight," is without merit.

8
9
10
11

   Additionally, opinions issued after an ALJ's adverse determination are less persuasive. *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir.); *Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989) (new medical report following adverse administrative decision denying benefits carries little, if any, weight). Nonetheless, the Appeals Council reviewed Dr. Alvarez' assessment and explained that "there are no medical findings submitted by the treating physician or contained in the medical record that would support any greater limitations" than those found by the ALJ. AR 5.

12
13

   Accordingly, the Court finds that the ALJ's analysis of the medical evidence is supported by substantial evidence and is free of legal error.

14
15
16
17

*Duarte v. Astrue*, No. 1:06-cv-01252 AWI DLB, Findings and Recommendations Regarding Plaintiff's Social Security Complaint, pp. 12-13 (adopted in full). As is clear, Dr. Alvarez' February 2006 opinion is not new and material evidence. Insofar as Plaintiff's attack is directed at evidence and findings made in connection with his first hearing, those findings are res judicata and therefore final. *Myers v. Gardener*, 361 F.2d 343, 346 (9th Cir. 1966).

18
19
20
21
22
23
24
25
26
27

  To the extent that Plaintiff attacks the findings related to his current application, the ALJ provided specific, legitimate reasons to reject Dr. Alvarez' opinion. Indeed, the ALJ expressly considered Dr. Alvarez' assessment that Plaintiff could work at a restricted light exertional level due to nerve entrapment, arthritis, and degenerative disc disease. AR 15. In so doing, the ALJ agreed with the Appeals Council's determination in the previous case that Dr. Alvarez submitted no medical findings to support the limitations and none appeared in the medical record. AR 15. An ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Plaintiff has not supplied any new and relevant treatment records from Dr. Alvarez

28

1   to support the instant application.  Even where, as here, the claimant is able to overcome the

2   presumption of continuing non-disability, certain prior findings, such as RFC are entitled to res

3   judicata absent new and material evidence on the issue. *Chavez,* 844 F.2d at 694.

4          Moreover, the ALJ found that Plaintiff had not submitted any other medical evidence

5   warranting a deviation from the prior denial of benefits.  In particular, the ALJ referenced the

6   treatment records of Dr. Gonzalez.  AR 16.  In May 2007, Plaintiff saw Dr. Gonzalez solely for

7   complaints of abdominal pain.  Dr. Gonzalez noted that Plaintiff wanted a referral to surgery "as

8   requested by his Lawyer," and a referral was made to Dr. Alvarez.  However, on examination,

9   Plaintiff had no testicular masses or tenderness, no hernias and no abnormalities.  AR 224.  Thus, the

10  ALJ also properly discounted Dr. Alvarez's opinion because it was inconsistent with other treatment

11  evidence in the record.  *See* 20 C.F.R. § 404.1527(d).

12         *Dr. Damania*

13         Plaintiff next argues that the ALJ improperly rejected the opinion of his examining physician,

14  Dr. Damania, in favor of the state agency physicians.

15         The opinion of an examining physician is entitled to greater weight than the opinion of a

16  nonexamining physician. *Pitzer v. Sullivan,* 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler,*

17  753 F.2d 1450 (9th Cir.1984).  As is the case with the opinion of a treating physician, the opinion of

18  an examining doctor, even if contradicted by another doctor, can only be rejected for specific and

19  legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala,* 53

20  F.3d 1035, 1042-43 (9th Cir.1995).

21         Here, the ALJ gave little weight to Dr. Damania's opinion because there was no "objective

22  evidence with specific medical findings that support the limitations" and no evidence adding

23  "medically-specific facts to those [the prior ALJ] considered."  AR 16.

24         Plaintiff contends that Dr. Damania's examination contains new factual medical evidence

25  that document range of motion limitations in his shoulder joints.  In particular, Plaintiff points to Dr.

26  Damania's findings that his shoulder joints had limited flexion, extension, abduction, adduction and

27  rotation.  Opening Brief, p. 5; AR 206.  Citing these findings, Plaintiff argues that (1) the previous

28                                                      11

1  disability application was based primarily on Plaintiff's failed inguinal hernia repair, and (2) the

2  prior ALJ only had normal range of motion data available from February 2005.  Opening Brief, p. 5.

3       Plaintiff's arguments are unsupported.  First, Plaintiff's previous disability application was

4  not limited solely to his failed inguinal hernia repair.  The prior ALJ's decision clearly indicated that

5  Plaintiff was alleging disability due to "pancreatitis, esophagitis, double hernia, nerve damage, and

6  *shoulder problems*."  AR 49 (emphasis added).  Further, the prior ALJ expressly considered

7  Plaintiff's complaints of bilateral shoulder pain, his reported inability to raise his arms, and MRI

8  findings confirming rotator cuff tears and impingement bilaterally.  AR 51.  In fact, based on the

9  medical record, the ALJ found it reasonable to limit Plaintiff's ability to perform overhead work.

10  AR 52.  Further, the district court reviewed the prior ALJ's determination and found that he had

11  properly accommodated Plaintiff's shoulder impairment.  *Duarte v. Astrue*, No. 1:06-cv-01252 AWI

12  DLB, Findings and Recommendation Regarding Plaintiff's Social Security Complaint, pp. 13-14

13  (adopted in full).

14       Second, the prior ALJ reviewed more than normal range of motion data from February 2005.

15  Indeed, the ALJ considered not only the August 2005 MRIs confirming bilateral rotator cuff tears,

16  but also the September 2005 medical records from Dr. Alok Gaur.  AR 52, 164, 179, 180.  Dr.

17  Gaur's medical records contained express medical evidence regarding Plaintiff's range of motion in

18  his shoulders.  AR 164.

19       Plaintiff claims that the later range of motion limitations found by Dr. Damania in 2006 were

20  significantly different from what was available to the prior ALJ.  However, Plaintiff apparently fails

21  to recognize that Dr. Damania identified a greater (or better) range of motion in his shoulder joints

22  than that identified in Dr. Gaur's earlier treatment records.  For instance, Dr. Damania opined that

23  Plaintiff had abduction to 100 degrees (Plaintiff avers normal is 150), whereas Dr. Gaur opined that

24  Plaintiff had abduction in his right shoulder to 90 and in his left shoulder to 80.  AR 164, 206.

25  Further, Dr. Damania opined that Plaintiff had external rotation to 40 degrees (Plaintiff states normal

26  is 90), while Dr. Gaur found that Plaintiff had external rotation to 40 in his right shoulder, but

27  external rotation only to 35 in his left shoulder.  AR 164, 206.  Dr. Damania also made no effort to

28

1   distinguish between left and right shoulder joint range of motion.  AR 206.  Based on the record,

2   Plaintiff's range of motion apparently improved to some degree by the time he was examined by Dr.

3   Damania.

4          Plaintiff also argues that the only reason the ALJ rejected Dr. Damania's opinion in this case

5   was because it did not add "new factual medical evidence."  Opening Brief, p. 6.  This is not

6   accurate.  While the ALJ did note that Dr. Damania added no new factual medical evidence

7   regarding Plaintiff's impairments, he also gave little weight to the opinion because it was

8   conditioned on correlation with objective medical evidence and Dr. Damania questioned Plaintiff's

9   self-reported limitations.  AR 16, 208.  Accordingly, the ALJ appropriately concluded that these

10  conditions and questions diminished "the force of Dr. Damania's opinions."  AR 16.  An ALJ is

11  entitled to make logical inferences from the record.  *See Sample v. Schweiker*, 694 F.2d 639, 642

12  (9th Cir. 1982).   Furthermore, an ALJ is entitled to reject a doctor's opinion that is based on a

13  claimant's subjective complaints, particularly where they are questioned, and not on a review of

14  "objective medical data or reports from treating physicians."  *Bayliss v. Barnhart*, 427 F.3d 1211,

15  1217 (9th Cir. 2005) (substantial evidence supported ALJ's decision to reject physician opinions that

16  were based on subjective complaints and did not include a review of objective medical data).

17         As a practical matter, the ALJ also considered whether Plaintiff would be disabled if he was

18  limited to light work consistent with Dr. Damania's opinion.  The ALJ determined that even

19  accepting this opinion, Plaintiff would still be found not disabled under the Medical-Vocational

20  Guidelines ("Grids"), Rule 202.07.  AR 18-19.

21         Plaintiff argues that he should be found disabled under Grid Rule 202.06.  Opening Brief, p.

22  6. Per Grid Rule 202.06, a claimant who is limited to light work, is of advanced age, has a high

23  school education and does not have transferable skills is disabled.  20 C.F.R. Pt. 404, Subpt. P, App.

24  2, Table 2, Rule 202.06.  However, as the Commissioner points out, Grid Rule 202.06 is inapplicable

25  because it applies to claimants that do not have transferable skills, and Plaintiff does have

26  transferable skills.  The ALJ applied Grid Rule 202.07 based on vocational expert's testimony at the

27  prior hearing that Plaintiff had transferable painting skills and there would be 11,945 semi-skilled

28                                               13

1  retail sales jobs in California utilizing these skills.  AR 19, 54.  As such, the ALJ applied to proper

2  Grid Rule.

3        Based on the above, the ALJ's analysis of the medical evidence and opinions is supported by

4  substantial evidence and free of legal error.

5  B.     Credibility

6        As final matter, Plaintiff argues that the ALJ failed to provide clear and convincing reasons

7  for rejecting his testimony.

8        In *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir.2007), the Ninth Circuit summarized the

9  pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's

10  subjective complaints:

11        An ALJ is not "required to believe every allegation of disabling pain" or other
          non-exertional impairment. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989).
12        However, to discredit a claimant's testimony when a medical impairment has been
          established, the ALJ must provide " 'specific, cogent reasons for the disbelief.' "
13        *Morgan*, 169 F.3d at 599 (quoting *Lester*, 81 F.3d at 834). The ALJ must "cit[e] the
          reasons why the [claimant's] testimony is unpersuasive." *Id.* Where, as here, the ALJ
14        did not find "affirmative evidence" that the claimant was a malingerer, those "reasons
          for rejecting the claimant's testimony must be clear and convincing." *Id.*

15

16        Social Security Administration rulings specify the proper bases for rejection of
          a claimant's testimony ... An ALJ's decision to reject a claimant's testimony cannot be
17        supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at
          57860 ("Although Social Security Rulings do not have the same force and effect as
18        the statute or regulations, they are binding on all components of the Social Security
          Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see*
19        *Daniels v. Apfel*, 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's
          decision at step three of the disability determination was contrary to agency
20        regulations and rulings and therefore warranted remand). Factors that an ALJ may
          consider in weighing a claimant's credibility include reputation for truthfulness,
21        inconsistencies in testimony or between testimony and conduct, daily activities, and
          "unexplained, or inadequately explained, failure to seek treatment or follow a
22        prescribed course of treatment." *Fair*, 885 F.2d at 603; *see also Thomas*, 278 F.3d at
          958-59.

23        Here, the ALJ found Plaintiff's statements regarding the intensity, persistence and limiting

24  effects of his symptoms were not credible for several reasons.  First, the ALJ found Plaintiff's

25  reported limitations were "far more restrictive than his own treating doctor or Dr. Damania gave

26  him."  AR 17.  Plaintiff has not challenged this determination.  Moreover, an adverse credibility

27  determination may be based on inconsistencies between a claimant's complaints and the clinical

28                                         14

findings.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  Here, for example, Dr. Alvarez

opined that Plaintiff could lift 20 pounds occasionally and 15 pounds frequently, but Plaintiff

claimed he could only lift a 10-pound bag of potatoes.  AR 33, 220.  Dr. Alvarez also opined that

Plaintiff could stand or walk 2-3 hours without interruption, whereas Plaintiff claimed he had to sit

down after an hour or an hour and a half.  AR 34, 220.  Dr. Damania concluded that Plaintiff could

stand and walk for six hours out of a normal eight-hour day, but Plaintiff claimed he could sit for

only half that time.  AR 35, 208.  Dr. Alvarez believed that Plaintiff could sit without interruption for

1½ - 2 hours, while Plaintiff claimed he could sit for only 45 minutes at a time.  AR 32, 221.

Second, the ALJ pointed to Plaintiff's testimony that he went to his employer and asked to be

put to work as evidence that Plaintiff felt he was able to work and not permanently disabled.  AR 17.

According to the record, Plaintiff testified that he went to his previous employer to ask for a chance

to work.  He explained at the hearing that he did not want a "nickel," but just needed some "medical"

because his wife was very sick, she had open heart surgeries and they had no money to pay the

surgery bills.  AR 42-43.  That Plaintiff, who was reportedly facing difficult economic

circumstances, attempted to find work is not a clear and convincing reason for an adverse credibility

finding.  *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007) (a claimant's attempt at

working, as a basis for undermining credibility, is "especially unconvincing where . . . the individual

attempted to work only because of extreme economic necessity.").  In any event, the ALJ did not rely

solely, or even primarily, on Plaintiff's attempt to obtain employment to discredit his testimony.

*Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (upholding ALJ's

credibility determination even though one reason may have been in error).

As a third reason, the ALJ pointed to inconsistencies in Plaintiff's testimony and determined

that they diminished his credibility.  An ALJ may properly consider inconsistencies in a claimant's

testimony when making a credibility determination.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th

Cir. 2008) (ALJ may consider testimony by the claimant that appears less than candid); *Thomas v.

Barnhart*, 278 F.3d 947, 958-60 (9th Cir. 2002) (ALJ may consider inconsistencies a claimant's

testimony as a factor when weighing credibility); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir.

15

1  1996) (ALJ may rely on "ordinary techniques of credibility evaluation, such as the claimant's

2  reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by

3  the claimant that appears less than candid"); *Fair v. Bowen*, 885 F.2d 597, 604 n.5 (9th Cir. 1989)

4  ("[I]if a claimant . . . is found to have been less than candid in other aspects of his testimony, that

5  may be properly taken into account in determining whether or not his claim of disabling pain should

6  be believed."). Here, the ALJ took issue with Plaintiff's claim that he could not read or write, but

7  stated on his Disability Report that he was able to read, speak and write English. AR 17. According

8  to the record, Plaintiff testified, "I can't read, and I can't write," but he reported being able to read,

9  understand and write more than his name in English. AR 43, 118. He also wrote out his pain

10  questionnaire in English. AR 142-43.

11       The ALJ also took issue with Plaintiff's claim that he didn't finish school and received his

12  GED in prison, but reported that he completed 12th grade in 1967. AR 17. Based on the record,

13  Plaintiff testified that he "didn't finish school," that he "received a piece of paper when [he] was in

14  prison" and that he "finished [his] high school." AR 28, 43. In contrast, he indicated in his

15  Disability Report that he had completed the 12th grade in 1967. AR 123. Plaintiff contends that the

16  variance between his testimony and the disability report completed by a Social Security worker is

17  insignificant. To bolster his contention, Plaintiff points to his testimony in the prior disability case.

18  Unfortunately, in that case, Plaintiff admitted to cheating on his GED, which underscores not only

19  inconsistency in his testimony, but also a lack of candor in this case. *See Duarte v. Astrue*, No. 1:06-

20  cv-01252 AWI DLB, Findings and Recommendation Regarding Plaintiff's Social Security

21  Complaint, p. 2 (adopted in full). Accordingly, the ALJ did not err in considering inconsistencies in

22  Plaintiff's testimony.

23       Plaintiff also argues that the ALJ erred in his credibility determination by failing to consider

24  Plaintiff's 36 year work history and his activities of daily living. Opening Brief, p. 8. Essentially,

25  Plaintiff claims that the ALJ failed to consider all of the factors outlined in Social Security Ruling

26  ("SSR") 96-7p in rejecting his credibility.

27       SSR 96-7p provides factors that may be considered to determine a claimant's credibility, such

28                                                    16

as: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain and other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p.

However, an ALJ is not required to discuss and analyze each and every one of the factors enumerated in SSR 96-7p. *See, e.g., Howard v. Astrue*, 2010 WL 546715, *13 (E.D. Cal. Feb. 10, 2010) (plaintiff incorrectly argued that SSR 96-7p sets forth mandatory factors that an ALJ must analyze); *Collins v. Astrue*, 2009 WL 1202891, *6 (C.D. Cal. Apr.27, 2009); *O'Neal v. Barnhart*, 2006 WL 988253, *12 n. 7 (C.D. Cal. Apr.13, 2006). Rather, the ALJ must give consideration to these factors. *See* SSR 96-7p.

Here, the record as a whole reflects adequate consideration of these factors. For instance, the ALJ elicited testimony regarding Plaintiff's daily activities (AR 39-42), the location, duration, frequency, and intensity of his pain and other symptoms (AR 31-32, 36-38), the factors that precipitate and aggravate the symptoms (AR 33-35, 36, 38), the type, effectiveness, and side effects of any medication (AR 30, 38-39), his treatment (AR 30), any measures other than treatment to relieve pain or other symptoms (AR 30-32, 39) and any other factors concerning his functional limitations and restrictions (AR 34-35, 36-37). The ALJ also received testimony and argument regarding Plaintiff's work history. AR 27-29.

For the reasons discussed above, the ALJ has provided specific, cogent reasons for discounting Plaintiff's credibility.

## **RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and is based on proper legal standards. Accordingly, the Court RECOMMENDS that

17

1  Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be

2  DENIED and that JUDGMENT be entered for Defendant Michael J. Astrue and against Plaintiff

3  Rudy Duarte.

4      These findings and recommendations will be submitted to the Honorable Oliver W. Wanger

5  pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served

6  with these findings and recommendations, the parties may file written objections with the court.  The

7  document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

8  The parties are advised that failure to file objections within the specified time may waive the right to

9  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

10     IT IS SO ORDERED.

11  **Dated:   January 18, 2011**           **/s/ Dennis L. Beck**
                                      UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18